BESSIE JUCKETT ET AL., APPELLEES, V. SAM BRENNAMAN
ET AL., APPELLANTS.

FILED APRIL 29, 1916.   No. 18790.

1. **Venue:** ACTION AGAINST SURETIES.  A surety upon a saloon-keeper's bond has such an interest in an action to recover civil damages brought against the saloon-keeper and his surety that an action may be brought against it in any county where it may be found. *Kramer v. Bankers Surety Co.*, 90 Neb. 301.

2. ———: ACTION AGAINST FOREIGN CORPORATIONS.  A foreign corporation is "found," within the meaning of section 7619, Rev. St. 1913, in any county in which proper service can be had.  *Council Bluffs Canning Co. v. Omaha Tinware Co.*, 49 Neb. 537.

3. **Process:** SUMMONS: SERVICE ON INSURANCE COMPANY.  In an action against an incorporated insurance company in a county where there is an agency, the service may be upon the chief officer of such agency. Rev. St. 1913, sec. 7635.

4. **Intoxicating Liquors:** LIABILITY OF SELLER.  "One selling intoxicating liquor is liable, not only for the actual results of the sale, but for all damages growing out of the disqualification resulting from or contributed to by such sale, without reference to the time through which such disqualification may continue." *Jessen v. Willhite*, 74 Neb. 608.

5. ———: LIABILITY OF SELLER AND SURETIES.  A saloon-keeper and the sureties upon his bond are liable for the loss of support sustained by a widow and children of a decedent whose death was contributed to by intoxicating liquors bought from the saloon-keeper or drank by the deceased. *Schiek v. Sanders*, 53 Neb. 664.

6. ———: ———.  Licensed liquor dealers in this state are liable in damages for all the legitimate and proximate consequences of their traffic, and, if they have induced drunkenness in a previously sober and industrious man who afterwards dies from exposure while in a condition of intoxication even after they have ceased to furnish him with liquors, they and their sureties may be liable to his widow and children for the damages they have suffered.  *Stahnka v. Kreitle*, 66 Neb. 829.

7. **Evidence:** DECLARATIONS: ADMISSIBILITY.  Spontaneous and unpremeditated declarations as to pain or suffering made when the circumstances show the absence of design or motive on the part of the person making them are competent evidence of physical condition.

8. **Evidence** examined, and *held* to support the verdict.

APPEAL from the district court for Madison county: ANSON A. WELCH, JUDGE. *Affirmed.*

*Willis E. Reed, M. A. Hall* and *Cain & Mapes,* for appellants.

*Kelsey & Rice, contra.*

LETTON, J.

This is an action by the widow of Delbert B. Juckett against a number of saloon-keepers and the sureties on their respective bonds to recover damages under the Slocum act. Plaintiff had judgment for $17,000, and defendants appeal.

Ten of the defendants were licensed saloon-keepers in the city of Fremont during the license years of 1910, 1911 and 1912; another was in business at Cedar Bluffs during that time; while three of the defendants held licenses for the license year of 1913 in the towns of Royal, Brunswick, and Neligh, respectively, in Antelope county. The other defendants are sureties upon the bonds of these saloon-keepers.

It is alleged that in 1910 the deceased was a healthy, robust man; that the defendants, who were saloon-keepers in Fremont during part of 1910 and during the years of 1911, 1912, and part of 1913, sold liquors continuously and frequently to deceased, which he drank; that he was frequently drunk during this period in their saloons; that by such sales they caused him to form the habit of drinking to excess, and to become a drunkard, and by causing and contributing to his continual drunkenness they each caused him to become weakened and debauched in body and mind, his physical and vital force to become exhausted, and his ability to resist disease and exposure impaired and weakened, "and each of them thereby rendered the said Delbert B. Juckett an easy victim to dis ease, exposure and death." A like charge is made for the year 1913 against the other defendants, who were saloon-keepers in Antelope county.

It is next alleged that on December 26, 1913, deceased procured liquor from defendant Brennaman at Royal, Nebraska; that he started to go from Royal to his home in the country about ten miles away, about 6 o'clock in the evening, in an open wagon; that he had liquor with him which he had procured from Brennaman that day and which he drank on his way home; that he became intoxicated, lay down in his wagon, passed into a drunken slumber and paralyzed condition; that, the weather being cold, he was exposed to the cold in the wagon box for a number of hours, and died from the exposure, as a result of his intoxication and as a result of his weakened physical and mental condition.

Objections were filed by each of the saloon-keeper defendants to the jurisdiction of the court: "(1) Because he is not a resident of Madison county, Nebraska, nor was he served with a summons in the above entitled action in Madison county, Nebraska. (2) That the cause of action did not accrue in Madison county, Nebraska, nor was any one in said county upon whom legal service could be had or obtained when the petition was filed in said county." Each of these objections was overruled and separate answers were filed. The answers each admit that defendants were licensed saloon-keepers and sureties on their bonds as alleged, pleads they were not residents of Madison county and were not served with summons in that county, a misjoinder of causes of action, misjoinder of parties defendant, and a general denial.

The assignments of error are: "(1) The court had no jurisdiction of the persons of either of the defendants. (2) The verdict is contrary to law and is not supported by sufficient evidence. (3) Errors of law occurring at the trial. (4) The verdict is excessive and is the result of prejudice and passion."

1. A summons was issued to the sheriff of Madison county, which was returned showing personal service on the chief officer of the agency of the domestic surety com-

pany at its agency in Madison county, Nebraska. A like return was made as to service upon the chief officer of the agency of the foreign corporations. Section 7635, Rev. St. 1913, provides: "When the defendant is an incorporated insurance company, and the action is brought in a county in which there is an agency thereof, the service may be upon the chief officer of such agency." Section 7619, Rev. St. 1913, provides also that an action against "a foreign corporation may be brought in any county in which there may be property of, or debts owing to said defendant, or where said defendant *may be found.*" Under these provisions service upon the "chief officer of such agency" in the county, of either a foreign or a domestic insurance corporation, is sufficient. The defendant is "found" in any county upon which proper service can be had upon its agent. *Council Bluffs Canning Co. v. Omaha Tinware Mfg. Co.,* 49 Neb. 537. The final proviso of section 7619, that if the "defendant be a foreign insurance company, the action may be brought in any county where the cause, or some part thereof, arose," is not a limitation, but an extension of jurisdiction, so that a recovery may be had in counties other than where the defendant is situated or may be found. These questions have already been settled by decisions of this court. *Western Travelers Accident Ass'n v. Taylor,* 62 Neb. 783; *Kramer v. Bankers Surety Co.,* 90 Neb. 301; *Horst v. Lewis,* 71 Neb. 365. The court, therefore, had jurisdiction to render the judgment complained of.

2. The assignment, "Errors of law occurring at the trial," has repeatedly been held too indefinite to warrant review by this court, but we will consider it. It is complained that Mrs. Juckett was permitted to testify to statements made by Juckett regarding his health and physical condition. It is often difficult to prove the condition of a person's health unless his own declarations under certain conditions are admitted in evidence. Spontaneous declarations made when there is no thought of any litigation or controversy, and when the circumstances

tend to show the absence of any design or motive on the part of the declarant, are admissible. *Hewitt v. Eisenbart,* 36 Neb. 794. This is the general rule. 2 Jones, Commentaries on Evidence, sec. 349.

It is next argued that it was error to exclude an application made by Juckett for life insurance in May, 1913, and the written report made by the examining physician at that time. It was not proved that Juckett had read the statements written in the application by the doctor before he signed it. Moreover, the circumstances under which the statements were made were such as to induce in the appellant a desire to show a favorable state of health on his part. They were not made spontaneously and unpremeditatedly without any thought as to their possible effect upon the circumstances of the applicant. If a proper foundation had been laid, perhaps it would not have been erroneous to admit them, since such matters are largely in the discretion of the trial judge, but it was not erroneous to exclude them. So far as the report of the medical examiner is concerned, he was present at the trial and testified on behalf of defendants. This was the best evidence, and there was no error in excluding his written report.

It is next contended that instruction No. 2, requested by plaintiff, is erroneous. The substance of this instruction is that if the jury found at the time of his death that Juckett was of lessened or weakened physical and vital ability, and they further found that this condition was occasioned in any degree by his use of intoxicating liquors, "such finding is sufficient in law for you to further find that the death of said Delbert B. Juckett was caused or contributed to by his use of intoxicating liquor." The instruction is based upon the theory under which plaintiff seeks to recover, viz., that the excessive use of intoxicating liquors weakened Juckett physically to such an extent that he was unable to resist disease or exposure, and that as a result of such diseased and weakened condition he died from exposure. So far as the evidence

shows, the death of Juckett was caused by inability to resist cold, or from fatty degeneration of the heart. A man in ordinary health, dressed as Juckett was on the evening of his death, would have been exposed to no risk of injury to his health from the mere fact that he drove in an open wagon a comparatively short distance when the temperature was somewhere between 12 and 20 degrees above zero.

Defendants requested, and the court gave, instructions to the effect that, if the jury found that at the time Juckett was examined for life insurance, he was not exhausted and depleted in his physical and vital forces and was not suffering from heart trouble, but was in good physical and mental condition, they must find in favor of all the defendants from whom liquor was procured prior to that time; that if Juckett did not die from exhaustion and depletion of his vital forces caused or contributed to by his use of intoxicating liquors obtained from the defendants, but from some other independent cause, the saloon-keepers and their sureties are not liable, and their verdict should be for the defendants; that if they found the death was caused by heart trouble, brought on through lifting hogs, or through some other cause with which the drinking of liquors had nothing to do, then they should return a verdict in favor of defendants. When instruction No. 2 is considered in connection with the whole charge, which carefully protects the rights of defendants, and with the facts in evidence, we find it was not prejudicially erroneous.

It is contended that the verdict is not supported by sufficient evidence. It is undisputed that prior to 1910 Juckett, although he occasionally drank a glass of beer or stronger liquor, was not even what is termed a moderate drinker. His wife says he did not use liquor at all in 1907, and that in 1910 and thereafter he drank it to excess almost every time that he visited neighboring towns. As time passed on he became drunk more frequently. Up till 1913 the family lived on the farm of

Juckett's father in Saunders county. In that year he purchased an equity in a farm of 160 acres in Antelope county and removed there, where he continued to reside until his death. In that county he patronized the saloons of defendants who lived therein, and often carried whiskey home with him when he left the towns.

The evidence shows that after he began the excessive use of liquor he complained of trouble with his heart, that it did not beat at times. The last year he lived in Saunders county he procured aromatic spirits of ammonia as a stimulant. His extremities would become cold and he would have difficulty in getting warm. He was very much troubled with constipation and used medicine to overcome this condition. After they moved to Antelope county he had several sinking spells of like nature to those which he had in Saunders county. When in Antelope county he continued to drink to excess and would frequently come home very much under the influence of liquor. He usually brought liquor home with him on such occasions and sometimes failed to get home until the next day. After these debauches he was nervous and depressed, and usually ate little and slept a good deal until he became thoroughly sober. On December 23, 1913, he left home about 11 o'clock in the morning, went to Royal, and came home at midnight drunk. He had slipped or fallen forward and was upon his knees in the wagon. He had some groceries and a quart bottle of whiskey. He went to bed about 1 o'clock that night, got up the next afternoon, complained of headache and of being chilly and cold. The next day he did not work. On Christmas day he was ill and ate nothing but some chicken broth, and the next day he took a load of corn to Royal. He left home at about 11 o'clock A. M. About midnight his wife heard the team come home. She saw no one in the wagon box, but found Juckett in the front on his knees and lying or leaning over on his face. Part of his clothing was saturated with whiskey. She called the neighbors and tried to revive him, but without avail. No

Juckett v. Brennaman.

inquest was held. Two doctors testify that in their opinion he came to his death from the fact that his physical condition and vitality had been so weakened and undermined by the excessive use of intoxicants that he was unable to resist the cold and exposure, and that his weakened condition was the proximate cause of his death. A number of physicians testified on the part of defendants that he might have died from apoplexy or from some heart trouble, but on cross-examination they stated that the continued use of intoxicating liquors might have a tendency to cause apoplexy. The general trend of their testimony, however, was that he might have died from some other cause. It is shown that when not upon one of these periodical sprees Juckett was above the average man in ability. He had been a superintendent of schools, had taught the use of musical instruments, was successful as a breeder of thoroughbred hogs and made a good income from his farm. He was stout and stocky in build and was able to do hard work upon the farm during the summer of 1913. The testimony of his wife is that he made $3,000 a year from the sale of his hogs and about $2,000 from the farm, but that there were about $2,500 expenses, so that his net income was about $2,500 per annum. It is shown, however, that the only property he owned was his interest in the Antelope county farm, upon which he still owed $6,600, and the personal property on the farm. There is proof as to each of the defendants, against whom a verdict was rendered, that he had procured liquor in their saloons with more or less frequency during the license years of 1911, 1912 and 1913. The proof as to some of the defendants was that he had purchased liquors from them only once, or perhaps twice; but it is clear that it was purchased during this period in which the habit of intoxication was being formed. Under the drastic provisions of the statute, the saloon-keeper who sells one glass of liquor which tends to produce such a condition is as much liable for the results thereof as he who sells in greater quantities.

The defendants contend that the evidence shows that Juckett was strong and able to do heavy work in 1913; that he was examined in the latter part of May for life insurance and passed; and that there could be no liability except on the part of Brennaman, who sold liquor to him thereafter.  It was for the jury to determine from all the evidence whether the death of Juckett was caused by the use of intoxicating liquor, and, if so, whether it was the result of recent drinking or whether it was contributed to by sales made to him by all the defendants. There is evidence to support either view.

It is argued that the verdict of $17,000 is excessive. Juckett's expectancy was about 24 years.  The evidence is not clear as to how much he devoted to the support of his family each year, but if he contributed $1,500 a year, which seems a fair conclusion from the evidence, the present worth would exceed the amount of the verdict. The recovery seems large, yet the loss to the family may far exceed the monetary return.  For the reasons set forth, the judgment of the district court is

AFFIRMED.

SEDGWICK, J., not sitting.