FRANCES F. WILEY ET AL., APPELLEES, v. NATIONAL SURETY
COMPANY ET AL., APPELLANTS.

FILED DECEMBER 26, 1918.    No. 20158.

1. **Partnership:** TORTS: VENUE. The liability of the members of a partnership for a tort that grows out of the partnership business is joint and several, and they may be sued in the county where one of the members resides, and summons may be issued to other counties for any person participating in the tort.

2. **Intoxicating Liquors:** VERDICT: JUDGMENT. In an action against licensed saloon-keepers and their sureties for damages for loss of support on account of intoxicants sold to plaintiff's husband, in which the jury returned a verdict against all defendants for an amount in excess of the sum stipulated in the bond, the district court has power to render judgment against the principal defendants for the full amount of the verdict, and may also render judgment against the sureties for the sum stipulated in the bond. The rule announced in *Bergmann v. Koehn*, 99 Neb. 525, and reaffirmed in *Hauth v. Sambo*, 100 Neb. 160, is adhered to.

3. ———: Loss of Support: Liability. Saloon-keepers who contribute by the sale of even a small quantity of intoxicants to a person while he is forming the drink habit and their sureties are liable in damages to the parties named in the statute for the loss of support.

4. **Evidence:** MORTALITY TABLES. In an action by a wife against licensed saloon-keepers for loss of support occasioned by her husband becoming totally incapacitated by intoxicants sold to him by such saloon-keepers, and from which he subsequently died, *held*, the Carlisle table of mortality is competent evidence of the life expectancy of the decedent.

5. **Damages.** The evidence examined, discussed in the opinion, and *held*, a verdict for $6,000 is not excessive.

APPEAL from the district court for Madison county: ANSON A. WELCH, JUDGE. *Affirmed.*

*T. J. Doyle* and *Barnhart & Stewart*, for appellants.

*Kelsey & Rice* and *O. S. Spillman*, contra.

DEAN, J.

Mrs. Frances F. Wiley, in behalf of herself and two minor children, sued certain licensed saloon-keepers and the sureties on their respective bonds in Madison county, under the Slocumb law, (Rev. St. 1913, ch. 40), to recover damages for total loss of support said to have been suffered by plaintiffs because of the sale of intoxicating liquors to her husband from May 1, 1910, to September 1, 1912, from the effects of which he subsequently died. Plaintiffs recovered judgment for $6,000 against the principals named in the bonds and $5,000 against the sureties; the latter sum being the amount of the liability named in each bond. All defendants appealed.

The defendants who were held liable for the judgment, except Ray Weber, are nonresidents of Madison county. The saloons of all principal defendants were located in Pierce county. Weber was the only defendant who was served with summons in Madison county. All defendants appeared specially and objected to the jurisdiction of the court on the ground that they were not lawfully served with summons. Defendants argue that the jurisdiction of the court depends alone on the service on Ray Weber, a member of the partnership of Smith & Weber, then doing a saloon business in Pierce county, and they insist that the partnership of which Weber was a member could lawfully be served with process only in the county where the partnership is located, and that the service on Weber was therefore void. We do not believe that the law contended for by defendants is applicable to the present case. The objections to jurisdiction were properly overruled.

The liability of the members of a partnership for a tort growing out of the partnership business is joint and several, and when the partners are sued and served with summons as individuals, as happened in this case, they may be sued in the county where one of their members resides, and summons may be issued to other counties against any person participating in the tort. 20 R. C. L. 914, sec. 126; 1 Bates, Partnership, sec. 471; *Rogers v. Ponet,* 21 Cal. App. 577; *Mathre v. Story City Drug Co.,* 130 Ia. 111, 8 Ann. Cas. 275; *In re Peck,* 206 N. Y. 55, 41 L. R. A. n. s. 1223.

Plaintiff's husband was a physican. They were married in 1904 when they were each about 25 years of age. From that time the family home was at the village of Osmond until after Dr. Wiley died. He successfully practiced his profession there until about one year before his death. At first they lived in rented property, but in 1909 they bought a home for $1,500, on which they paid $500. When they came to Osmond the doctor was of good physique and mentality, college bred, and well

equipped for a sucessful professional career.  That he acquired and persisted in the drink habit at the respective saloons of the principal defendants at Osmond and at Pierce in the years 1910, 1911, and 1912, until he became totally incapacitated from earning a livelihood for his family, and that he subsequently died of alcoholism, is amply supported by the evidence.  It would be impossible, nor is it required under the law, to determine from the evidence the degree of guilt of the respective saloon-keepers.  Under the sweeping terms of the Slocumb law, all are alike guilty whether they furnished much or but a small quantity of intoxicating liquor to Dr. Wiley while the drink habit was being formed.  *Juckett v. Brennaman,* 99 Neb. 755.  In a like case it was held that a saloon-keeper who furnished intoxicants to plaintiff's husband would not be released from liability even though the liquor was not furnished until after the husband had become a confirmed inebriate.  *Yechout v. Tesnohlidek,* 97 Neb. 387.  This was on the ground that under such conditions the furnishing of intoxicants would tend to hold the husband in his unfortunate state and prevent restoration.

A fruitless effort was made to show that the doctor was addicted to the morphine habit, but the proof was confined to a single instance in which a witness testified that on one occasion he saw him take two tablets of morphine, and that shortly thereafter he became drowsy and finally slept.

Besides his practice Wiley had an interest in a drug store at Osmond. An offer was made to prove that in the years 1909, 1910, and 1911, he was seen drinking whiskey in the drug store. On objection both offers were properly excluded.  *Acken v. Tinglehoff,* 83 Neb. 296; *Yechout v. Tesnohlidek,* 97 Neb. 387.  Under the act in question it became immaterial whether plaintiff's husband acquired the drink habit and then ceased the use of intoxicants before 1910, or that he sold some liquor

to others, or that he drank some liquor in the drug store when the important fact is established that, beginning in 1910, and almost until the day of his death, he was a frequent patron of the licensed saloons of the principal defendants, and that his destruction was finally accomplished by the excessive use of intoxicants.

Defendants' objection to the introduction of the Carlisle table of expectancy was properly overruled. There is nothing in the record to show that Wiley had any mental or physical infirmity that would tend to shorten his life or impair earning capacity that was not induced by the excessive use of intoxicants. *Acken v. Tinglehoff*, 83 Neb. 296.

The rule invoked by defendant that "an action on a saloon-keeper's bond is joint, and no greater judgment can be rendered against the principal than against the surety," does not prevail in this state. *Hauth v. Sambo*, 100 Neb. 160.

Defendants introduced a copy of a decree of divorce obtained by Mrs. Wiley from her husband on September 24, 1912, less than two months before he died. The sole finding on which the decree is based is "that the defendant is an habitual drunkard." In the divorce case Mrs. Wiley recovered one-half the value of her husband's property, $1,600, as alimony. The custody of his two daughters, Phyllis and Miriam, aged 4 and 6 years respectively, was awarded to the mother because Dr. Wiley was "not a suitable person to have the custody" of the children, but no provision was made for the maintenance, care or education of his daughters.

Defendants argue that the decree was a settlement of property rights of the parties, and that plaintiff therefore had no cause of action against them for loss of support. No authorities are cited to sustain this argument. It seems that the fact that Mrs. Wiley was compelled on grounds of drunkenness to obtain a divorce did not tend to minimize the damages, particularly in view of the fact that no provision was made,

nor under the circumstances could adequate provision be made, in the decree for the maintenance and education of Dr. Wiley's daughters. That burden was cast on her. Defendants complain because the court instructed the jury in substance that the divorce was not to be considered in determining the amount, if any, of plaintiffs' recovery, the decree not being absolute until the expiration of six months. Reversible error does not appear in the giving of the instruction, the cause of action having accrued before the divorce was granted.

In this connection it is argued that the verdict for $6,000 is excessive. We do not think so. Dr. Wiley was 33 years of age, with an expectancy of 31 years. The amount of money that he contributed to the support of his family before he became weakened and debauched in body and mind by the excessive use of intoxicants obtained from defendants was approximately $2,000 a year. A verdict of $17,000 was held not to be excessive in a similar case where the expectancy of the decedent was about 24 years and the contributions to the support of his family up to the time of death were shown to be about $1,500 a year. *Juckett v. Brennaman*, 99 Neb. 755.

Defendants complain of the giving of other instructions and also because instructions offered by defendants were refused. The instructions given seem fairly to reflect the evidence. The material objections urged in defendants' brief on the question of instructions given and refused are covered by the discussion herein. We do not believe it is necessary to extend this opinion by discussing them in further detail.

Finding no reversible error, the judgment is

AFFIRMED.

Rose, J., not sitting.

Cornish, J., dissenting.

Although the opinion speaks of "degrees of guilt" of the saloon-keeper, the Slocumb law under considera-

tion (as of course the writer of the opinion well understood) was in no sense a criminal statute. It recognized the lawful selling of intoxicating liquors. In our ready condemnation of the saloon-keeper and his business, we are liable to forget this. The law limited recovery to compensatory "damages sustained," attributable to the sale. Recoverable "damages" is and must be a loss sustained by reason of the act or default of another. It follows and is caused by the act. It is unthinkable, it would be a contradiction in terms, to consider as recoverable "damages" a loss sustained or a damage already accrued before the commission of the act. I cannot see how this proposition is debatable.

It appears in the evidence that the plaintiffs' intestate had been an habitual drinker and had kept a drug store; that he had twice been to an asylum for inebriates before the defendants ever sold to him. The defendants asked an instruction that his mental and physical condition, acquired as a result of his debauchment in previous years, should be considered by the jury in estimating the amount of the damages, so that, if the jury believed that any part of the damages, sustained by reason of his drinking habits, had already accrued they could take that into account. The instruction was refused.

Can it be doubted that such might be the condition? Undoubtedly not. The opinion itself recognizes the possibility of a "confirmed inebriate." The liquor habit might so undermine the physical constitution of the drinker that any doctor would say that he could not live a year longer. During that period he might as a stranger, and without the saloon-keeper or bar-tender knowing the condition, purchase a single drink. Should the saloon-keeper, under such circumstances, be liable under the law for 30 years' loss of support to the wife, indicated by his age merely, when, in fact, she had not lost a year's support? Of course, where the sale tends to make the condition worse, when it continues

him in a habit which he might otherwise stop, or when it prevents a reform, the situation is different. The jury should consider all the facts so as to discover the actual damages sustained. The law made all saloon-keepers who made sales during the period jointly liable. It was analogous to the liability of joint tort-feasors. Joint tort-feasors are liable, however, as if participating in one act, and are not liable for previous, distinct and unconnected acts.

In *Stahnka v. Kreitle,* 66 Neb. 829, we held that saloon-keepers are "not liable for damages resulting from a like traffic before they engaged in the business." In the opinion it is suggested that a law attempting to make the saloon-keeper liable for "damages attributable to such traffic (the saloon traffic) by his predecessors in the business" would be unconstitutional, if enacted. In *Yechout v. Tesnohlidek,* 97 Neb. 387, in an opinion by Judge Reese, we said that "the fact that such husband and father was a drinker, or even a drunkard, before the time charged as the beginning of the sales would not of itself defeat a recovery, if liquors sold to him after such time by defendant contributed to keeping him in that condition." The opinion recognized that the drinker's condition at the time of the sale was proper to be shown and considered by the jury.