ERNEST DODSON v. STATE OF NEBRASKA.

FILED JANUARY 30, 1930. No. 26950.

*J. E. Willits*, for plaintiff in error.

*C. A. Sorensen, Attorney General*, and *Homer L. Kyle*, contra.

Heard before GOSS, C. J., GOOD, THOMPSON, EBERLY and DAY, JJ., and FOSTER and SHEPHERD, District Judges.

Shepherd, District Judge.

Plaintiff in error, hereinafter called defendant, a man of about 23 years of age, was charged with assault with intent to ravish a 14 year old girl, and was convicted. He assigns as reversible error that the court permitted the prosecuting witness to detail in her testimony what she told others of the alleged assault, and permitted one of such others to likewise detail what she said, and permitted a third witness for the state to express his opinion as to the identity of the defendant; all over his objections duly made.

The act occurred at the home of Mrs. Roberts, a sister of the defendant, whither the prosecuting witness had been sent with defendant to get some dishes for a wedding supper which defendant's mother was preparing to grace the nuptials of a younger daughter. The prosecuting witness lived with Mrs. Roberts, who was at the time assisting her mother at the latter's home.

The girl told a straightforward and convincing story of the assault, stating what occurred with great clearness and particularity: Arrived at the Roberts house and safe from observation within, the defendant seized her with one arm between her legs and the other about her waist and carried her kicking, screaming and fighting into a bedroom, where he laid her upon the bed, extended himself upon her and attempted to ravish her. By dint of superior strength he was able to, and did, overcome her, despite her most strenuous and continued resistence. Before he accomplished his purpose, however, and before he had proceeded to the point of penetration, she pretended to be about to faint and persuaded him to let her get a drink. From the kitchen, where he gave her a glass of water, she ran to the front door of the house and then to the back, seeking escape. In each instance he was too quick for her. Besought by him to "come on and be a good little sport," and again seized as before, she suggested that they first get a box from the cellar for the dishes. To this he finally assented and they started for the cellar, going out onto the back porch together and then, as he stooped to raise the trap-door at her direction, she sprang from the porch and ran to a nearby

grocery store, flinging herself down with head on the counter and weeping and declaring that a man was after her. She told the groceryman and his wife, who endeavored to reassure her, all that had happened, with many details that need not be set forth here. This story she repeated upon the stand; and the groceryman also detailed it when he was examined as a witness for the state.

Counsel for the defense made timely objection to this recapitulation by the girl and by the storekeeper, taking due exceptions, moving to strike the testimony and availing himself of every means to convince the court that the said testimony was as incompetent and prejudicial as a thorough knowledge of the criminal law and long experience in the practice could suggest.

The ordinary rule in cases of this kind is that the prosecuting witness may testify that she made complaint after the assault, and when, to whom and under what circumstances; but she may not detail the story that she told in making such complaint. And the person to whom she made complaint may also testify that she complained, and may state the time, place and circumstances of the complaint, but not what she said concerning the circumstances and details of the assault. The rule is well stated in *Oleson v. State,* 11 Neb. 276, and *Krug v. State,* 116 Neb. 185.

But these authorities recognize an exception in the case of words or statements which are of the *res gestæ;* and the court is of unanimous opinion that what the prosecuting witness said when she fled from her assailant, declaring that a man was after her and sobbing out her story to gain protection, was a part of the *res gestæ.*

Undoubtedly, the trial judge so considered in receiving the testimony; and he was right. The time was immediate, the girl was in tears and fear, was in the course of escape, and was in such state of mind that her words had all of the spontaneity that they would have had if she had been struggling in the grasp of the defendant and calling for help from bystanders—shrieking out the story of her assault to enlist sympathy and to secure succor. *State v. Gandel,* 173 Minn. 305; *Fields v. State,* 107 Neb. 91; *Sulli-*

*van v. State,* 58 Neb. 796; *Hewitt v. Eisenbart,* 36 Neb. 794; *Juckett v. Brennaman,* 99 Neb. 755.

The defendant denied the assault and denied that he was at the Roberts house on the day in question. A next door neighbor, a Mr. Perdew, testified in substance that upon coming home at noon of the day in question he saw a man at the rear of the Roberts home; that the man was getting into a car and leaving as he drove in, and that he was of opinion that said man was the defendant, whom he, Perdew, afterwards learned to know. He stated in his testimony that he could not tell positively because his attention was somewhat engaged by another car near at hand, but that he saw him sufficiently to give a description of him, and that his candid opinion was that he was Ernest Dodson, the accused.

The defendant objected to this testimony, though he did not move to strike it out.

The evidence is far from certain. But the rule is that one who knows another and has opportunity to identify him may testify as to his opinion, even though he states that he cannot testify positively, and that it will be for the jury to determine the weight of the testimony. In the case of *People v. Rolfe,* 61 Cal. 541, the witnesses expressed the belief that the defendant was the person they had seen, but did not positively and beyond doubt identify him. The testimony was received and the court held that the evidence was sufficiently certain respecting the identity of the defendant to go to the jury, and that it was for the jury to say what weight it was entitled to. This was in a robbery case and is quite directly in point.

In a Pennsylvania case, *Udderzook v. Commonwealth,* 76 Pa. St. 340, a nonexpert witness was permitted to testify to the handwriting of three letters charged to be written by one A. C. Wilson, though one of them was signed by another name. She testified concerning one: "I know this handwriting; it is that of A. C. Wilson to the best of my knowledge." As to another she testified: "This is also the character of A. C. Wilson's writing; I think it is his handwriting." As to the third she stated: "This also looks like

his, but it is not so distinct; to the best of my knowledge, it is his." This testimony was received, the weight of it being left to the jury. In the *Udderzook* case also, witnesses were permitted to testify to their opinion in identifying the mutilated remains from photographs in evidence. In the article in 16 C. J. 750, sec. 1536, is to be found a discussion, citing cases in support of the doctrine and justifying the ruling of the trial court in the case at bar. See, also, 1 Jones, Evidence (2d ed.) sec. 361.

The defendant seems to have had a fair trial. His rights were well guarded by able counsel, and there appears to be no reversible error in the record. The judgment and sentence of the district court must therefore be affirmed.

AFFIRMED.