[No. 85511-1.    En Banc.]

Argued October 27, 2011.    Decided October 25, 2012.

THE STATE OF WASHINGTON, *Petitioner*, v. LINDY DEER, *Respondent*.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Andrea R. Vitalich, Deputy*, for petitioner.

*Lila J. Silverstein* (of *Washington Appellate Project*), for respondent.

*Sheryl G. McCloud* and *Lenell R. Nussbaum* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae.

¶1 STEPHENS J. — Lindy Deer was convicted of third degree rape of a child after having sexual intercourse with a 15-year-old boy on multiple occasions. Deer claims that she was asleep during several acts of intercourse and

cannot be guilty of rape because she did not act with volition. We hold that Deer's claimed lack of volition amounts to an affirmative defense, for which the defendant bears the burden of proof by a preponderance of the evidence. The trial court correctly refused Deer's request to instruct the jury that the State must prove beyond a reasonable doubt that she was awake during the acts at issue. We reverse the Court of Appeals.

## FACTS

¶2 Lindy Deer, a 52-year-old woman, had sexual intercourse with 15-year-old R.R. on several occasions. Their relationship developed when R.R. moved in with his aunt in Auburn, Washington, to attend a private religious boarding school. Deer was an administrative assistant for R.R.'s aunt. Deer said she had "motherly" feelings for R.R., who would occasionally help her with chores and sleep over at her house. At one point, she gave R.R. "kissing lessons," during which the two kissed on the mouth. 1 Report of Proceedings (RP) (2/11/09) at 24-25, 27-28. Deer told R.R. that she would have no problem having sex with him "if it wasn't wrong in the eyes of society." *Id.* at 39. The "kissing lessons" eventually escalated into a sexual relationship. R.R. later revealed their sexual relationship to a school guidance counselor, and Deer was arrested and charged with rape of a child in the third degree. The charging document alleged three counts, involving two discrete time periods: June 6-December 15, 2006 (Count I) and January 1-June 11, 2007 (Counts II & III). Clerk's Papers (CP) at 64-65.

¶3 All told, between R.R.'s testimony and Deer's, the jury heard evidence of at least seven separate incidents of sexual intercourse. At trial, Deer argued that some of her sexual acts were not voluntary, or "volitional," because she was asleep when they occurred. Pursuant to this theory, she asked the trial judge to instruct the jury to acquit if there

was reasonable doubt that sexual intercourse was volitional on her part. The trial judge refused, instead instructing the jury to acquit if Deer proved by a preponderance of the evidence that sex had occurred without her knowledge or consent. The jury was instructed that it needed to unanimously agree on one act for each count but did not need to find that all of the alleged acts occurred. *Id.* at 23. Deer acknowledged she was not asleep during all of the incidents. Additionally, during some of the incidents Deer testified she slept through, R.R. testified she was an active participant. Deer also testified that she did not *consent* to some of the incidents though she was aware they took place.

¶4 With respect to the jury instructions, Deer did not object to the "to convict" instructions for the three counts, which said nothing about "volition" as an element of the alleged crimes. *Id.* at 20-22. Deer refused the giving of any instruction on the defense of duress. 2 RP (2/12/09) at 3-5. Her only objection was to instruction 11, which set forth a defense based on the defendant's lack of "knowledge or consent" to sexual intercourse. CP at 24. More specifically, Deer objected to placing upon her the burden of proving the defense by a preponderance of the evidence, but not to instructing the jury as to the meaning of "knowledge or consent." 1 RP (2/12/09) at 111. Deer's theory was that her lack of knowledge or consent was akin to a diminished capacity defense. Her counsel argued:

> Your Honor, we believe this case is much more like diminished capacity in that you have to have some mental capacity to consent. We picture the State legislature finding a person guilty of a crime that they have no knowledge of even taking place at all.
>
> Could we imagine an initiative of any kind where there is a proposal to pass law finding people guilty of crimes that they were even unaware that they participated in and I think the answer is no. This case is most like a diminished capacity.

*Id.* at 6-7.

¶5 While Deer apparently proposed an alternative instruction to instruction 11, based on language the State had agreed to, it is not in the record. At trial, Deer's counsel described the instruction as stating that "volition goes to—really should go to reasonable doubt and if you have a reasonable doubt caused by lack of volition or evidence put on that we believe prove[s] lack of volition, that would go toward reasonable doubt, rather than a preponderance." 2 RP (2/11/09) at 80. The State insists "the instruction that Deer proposed and the State agreed to would have required the defense to produce sufficient evidence to raise a reasonable doubt as to whether the acts of sexual intercourse were 'volitional.' RP (2/11/09-II) 78." Suppl. Br. of Pet'r at 5 n.1. In the end, the State advocated for the court's instruction 11, analogizing the defense of lack of volition to unwitting possession of contraband. 2 RP (2/12/09) at 3-5. Deer's counsel lodged his objection. *Id.* at 111. The jury returned guilty verdicts on all three counts of child rape in the third degree, and the judge sentenced Deer to two 46-month sentences to be served concurrently.

¶6 The Court of Appeals set aside Deer's conviction due to a charging error. *State v. Deer*, 158 Wn. App. 854, 861, 244 P.3d 965 (2010).[1] Only because the issue could arise on remand did the Court of Appeals address Deer's challenge to instruction 11. *Id.* at 862. The court held that the State was required to prove beyond a reasonable doubt that Deer's actions were volitional, i.e., that she was awake during the encounters. *Id.* at 864. The State appealed and we granted review. *State v. Deer*, 171 Wn.2d 1012, 249 P.3d 1029 (2011). Thus, this case is in an unusual posture, as we are considering a claim of instructional error that has no practical effect on the validity of Deer's conviction. We are therefore not concerned with whether any error was harmless in light of the way the case was charged and tried. The question is simply whether the State bears the burden of

---

[1] The State did not seek review of that holding.

disproving Deer's claim that she was asleep because voli-
tion is an element of every crime.[2]

## ANALYSIS

¶7 The statute governing rape of a child in the
third degree reads:

> A person is guilty of rape of a child in the third degree when the
> person has sexual intercourse with another who is at least
> fourteen years old but less than sixteen years old and not
> married to the perpetrator and the perpetrator is at least
> forty-eight months older than the victim.

RCW 9A.44.079(1). The elements of the crime are thus (1)
sexual intercourse with another (2) who is at least 14 years
old but less than 16 years old and not married to the
perpetrator and (3) the perpetrator is at least 48 months
older than the victim. Due process requires the State to
prove every element of a crime beyond a reasonable doubt.
U.S. Const. amend. XIV; *In re Winship*, 397 U.S. 358, 364, 90
S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

¶8 We generally consider a crime to be made up of
two parts: (1) the actus reus and (2) the mens rea. *State v.
Eaton*, 168 Wn.2d 476, 480, 229 P.3d 704 (2010). As a strict
liability crime, child rape in the third degree requires no
proof of mens rea. *See State v. Chhom*, 128 Wn.2d 739,
741-43, 911 P.2d 1014 (1996). Generally, the State must
prove only that the act constituting a strict liability offense
occurred. However, Deer argues that "[a]s part of the *actus
reus* of any crime, the State must prove beyond a reasonable
doubt that a defendant voluntarily engaged in the pro-
scribed conduct." Suppl. Br. of Resp't at 6. She claims that a
perpetrator who was asleep during a criminal act has not
voluntarily engaged in the prohibited act. *Id.* at 7-8. Deer

---

[2] Like the Court of Appeals, we review this question because, although it is
moot, it may arise on remand. Our resolution of this question will also provide
guidance for future cases. *See* RAP 2.4(a); *Westerman v. Cary*, 125 Wn.2d 277, 286,
892 P.2d 1067 (1994).

urges this court to hold that once a defendant produces evidence of a lack of voluntary action, the State bears the burden of proving volition beyond a reasonable doubt. *Id.* at 9-11.[3] In other words, Deer asks this court to hold, as the Court of Appeals did, that the State must prove beyond a reasonable doubt that she was awake when the acts of child rape took place.

¶9 Our review of this question reveals that little attention has been paid to the notion of actus reus, and courts and commentators find it difficult to draw a bright line between volition and the knowledge component of mens rea. A recent article advocating for treating volition as an element of the State's case acknowledged that "[n]otwithstanding the purportedly central role that actus reus inhabits in criminal law philosophy, it remains a relatively insignificant issue in case law," and moreover, "courts are inconsistent on how they treat actus reus as an element." Melissa Hamilton, *Reinvigorating* Actus Reus: *The Case for Involuntary Actions by Veterans with Post-Traumatic Stress Disorder*, 16 BERKELEY J. CRIM. L. 340, 348, 349 (2011). While the author lauds the Court of Appeals opinion in this case, and would rely on *Winship*, 397 U.S. 358, as a due process basis for treating volition as an element the State must establish, *id.* at 350, she recognizes that "contemporary criminal law appears to have deviated from the long-standing voluntary act doctrine." *Id.* at 351.

■ ¶10 The law has "deviated" for good reason; theory and practice sometimes diverge. Breaking criminal responsibility into its component parts of actus reus and mens rea is fine in theory, but requiring the prosecution to establish volition—here consciousness—as an "element" in the strict

---

[3] The extent to which Deer is willing to accept a burden of producing evidence is not entirely clear. Deer raised a Fifth Amendment challenge in her pro se statement of additional ground for review in the Court of Appeals, challenging the trial court's ruling that she would have to testify to establish her claim that R.R. sexually assaulted her. Moreover, as discussed below, if consciousness is truly an *element* of child rape, the general rule is that a defendant bears no burden—neither production nor persuasion—to disprove an element.

sense is unreasonable. Elements are the essential components of a criminal charge. The State bears the burden of proving each element beyond a reasonable doubt. The defendant bears *no burden* to disprove the elements of a crime. Upon pleading not guilty, the defendant cannot be compelled to produce evidence to disprove an element. The jury must be so instructed, and it was properly instructed in this case. Instruction 4 stated in relevant part:

> The defendant has entered a plea of not guilty. That plea puts in issue every element of each crime charged. The State is the plaintiff and has the burden of proving each element of each crime beyond a reasonable doubt. The defendant has no burden of proving a reasonable doubt exists as to these elements.

CP at 17.

¶11 We must reject Deer's contention that the State is required to prove as an element of child rape that she was awake during the alleged acts. While she is entitled to argue a lack of conscious action, her claim is properly treated as an affirmative defense, much like claims of involuntary intoxication, insanity, or unwitting possession. *See* 13B Seth A. Fine & Douglas J. Ende, Washington Practice: Criminal Law § 3204, at 237 (2d ed. 1998) (observing that for crimes in which there is no mens rea requirement, the defense of involuntary intoxication must be proved by the defendant by a preponderance of the evidence).[4] The Court of Appeals recognized as much over 40 years ago in *State v. Utter*, 4 Wn. App. 137, 479 P.2d 946 (1971). There, the defendant claimed he did not commit a homicide because he killed the victim while acting under a " 'conditioned response' " resulting from his military training. *Id.* at

---

[4] We note that involuntary intoxication is one kind of diminished capacity defense. 13B Fine & Ende, *supra*, § 3205, at 239. We have elsewhere suggested in dicta that a diminished capacity defense is a negating defense. *See In re Estate of Kissinger*, 166 Wn.2d 120, 129, 206 P.3d 665 (2009). This may be true of certain diminished capacity defenses that go to the mens rea of a crime. But there is no doubt that an involuntary intoxication defense puts the burden of persuasion, by a preponderance of the evidence, on the defendant.

139. The court cited numerous authorities recognizing that the theory of involuntary or automatistic acts is "similar to one of mental incapacity," though "distinct from that concept." *Id.* at 141. The distinction is that automatism does not involve any claim of mental disease sufficient to establish diminished capacity or insanity, and the theory provides a *complete* defense, not mitigation to a lesser offense. *Id.* Significantly, however, it is an affirmative defense: " 'Where, at the time of the killing, the slayer was clearly unconscious thereof, such unconsciousness will constitute a defense, as in the case of a homicide committed by one in a state of somnambulism, or while delirious from disease.' " *Id.* (quoting 1 Oscar Leroy Warren & Basil Michael Bilas, Warren on Homicide § 61, at 198-99 (perm. ed. 1938)); *see also Utter*, 4 Wn. App. at 143 (recognizing that "unconsciousness does not, in all cases provide a defense to a crime," such as when it "is voluntarily induced through the use and consumption of alcohol or drugs").

¶12 It is generally recognized that the defendant bears the burden of proving an affirmative defense by a preponderance of the evidence.[5] The sole exception is when a defense "negates" an element of the charged offense, in which case due process requires the State to bear the burden of disproving the defense. *State v. Lively*, 130 Wn.2d 1, 10-11, 921 P.2d 1035 (1996). Deer's "sleep sex" defense does not fall within the category of negating defenses. Third degree rape of a child is a strict liability offense, the elements of which are sexual intercourse, between the defendant and a child who is at least 14 but under 16 years of age and at least 48 months younger than the defendant, occurring in the state of Washington. A claim of having been asleep during sexual intercourse with a child does not negate the fact that sexual intercourse occurred.

---

[5] This is not the same as creating a "reasonable doubt" as to an element of the State's case, which is apparently what Deer's proposed instruction would have required. *See State v. Riker*, 123 Wn.2d 351, 366-69, 869 P.2d 43 (1994).

¶13 The closest parallel to this defense may be the defense of unwitting possession in a prosecution for possession of a controlled substance. *State v. Bradshaw*, 152 Wn.2d 528, 98 P.3d 1190 (2004). Like rape of a child, possession of a controlled substance is a strict liability offense. Its elements are simply possession of an identified controlled substance in the state of Washington. *See* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 50.02, at 946 (3d ed. 2008). A defendant who asserts he did not know the substance was in his possession or did not know the nature of the substance must prove this by a preponderance of the evidence. *Bradshaw*, 152 Wn.2d at 538. The burden properly falls on the defendant because unwitting possession does not negate the fact of possession. Rather, as this court explained, "This affirmative defense ameliorates the harshness of a strict liability crime." *Id.* Thus, the defense must be allowed in order to avoid an unjust conviction, but the defendant bears the burden of proving it.[6]

¶14 It makes no sense to depart from this allocation of the burden of proof when the defendant claims to have been asleep during a strict liability crime. Being asleep is one of the many reasons a person might assert she did not *know* the criminal act occurred. Consider how treating a state of sleep as a negating defense would play out with respect to unwitting possession. How is the defense different when

---

[6] The dissent fears that we read too much into *Utter* in coming to this conclusion, noting that *Utter* never specifies whether the lack of volition, as a defense, is an affirmative defense. Dissent at 746-48. But *Utter* certainly does not foreclose treating volition defenses as affirmative defenses and, as noted, common sense tells us that Deer's "sleep sex" defense must be an affirmative defense. It admits the elements of the crime but offers an excuse from criminal liability. It may be that under *Utter* there are volitional defenses that are negating defenses. But this cannot be one of them. Neither does *Utter* undermine our conclusion when it observes that an unconscious act is not a criminal act, as the dissent argues. *Id.* at 747 (quoting *Utter*, 4 Wn. App. at 143). All *Utter* says is that an unconscious act "is merely a physical event or occurrence for which there can be no criminal liability." *Utter*, 4 Wn. App. at 143. We agree. The question here is who has the burden of proving there is no criminal liability. Nothing in *Utter* undercuts our conclusion that it is the defendant who properly bears the burden of proving her "sleep sex" defense.

the defendant claims he put on his roommate's jacket without knowing drugs were in the pocket, versus when he asserts someone put the jacket on him while he was asleep? It does not take an overactive imagination to foresee the potential for confusion or even mischief. Beyond unwitting possession, it must be recognized that putting the burden on the State to disprove an assertion of unconsciousness may expand defenses in other areas, such as the crime of driving under the influence. *See* 32 LINDA M. CALLAHAN, WASHINGTON PRACTICE: WASHINGTON DUI PRACTICE MANUAL § 14:24, at 338 (2011-12 ed.) (noting Court of Appeals opinion in *Deer* "may be helpful in defending persons who are accused of DUI while under the influence of zolpidem, in that they were actually sleeping while committing the crime").

¶15 The hypothetical example Deer offers to bolster her argument that the State bears the burden of proving consciousness actually *disproves* her point. Deer describes a case in which a 15-year-old boy drugs a 19-year-old woman and then has sexual intercourse with her while she is unconscious, making the woman potentially criminally liable under the statute at issue. Suppl. Br. of Resp't at 16. Deer expresses concern that the woman would have to bear the burden of proof as to her involuntary participation, even though she is the victim and not the perpetrator of a crime. But the law contemplates this scenario. Deer's example describes a textbook case of involuntary intoxication, which constitutes an allowable defense that "may absolve the defendant of any criminal responsibility." *State v. Hutsell*, 120 Wn.2d 913, 920, 845 P.2d 1325 (1993); *see also* 13B FINE & ENDE, *supra*, § 3204, at 237. Importantly, this defense must be proved by the defendant by the lower preponderance of the evidence standard. *State v. Riker*, 123 Wn.2d 351, 367, 869 P.2d 43 (1994) (citing *State v. Gilcrist*, 25 Wn.

App. 327, 328-29, 606 P.2d 716 (1980)).[7] In contrast, *voluntary* intoxication provides no defense to a strict liability crime insofar as it goes to the issue of mental state. *State v. Swagerty*, 60 Wn. App. 830, 833-34, 810 P.2d 1 (1991) (rejecting voluntary intoxication defense for rape of a child in the first degree).[8] While we recognize that requiring any level of proof from a victim such as the one Deer describes is onerous, the reason for putting the burden of proof on the defendant in such cases is "because generally, affirmative defenses are uniquely within the defendant's knowledge and ability to establish." *Riker*, 123 Wn.2d at 367 (citing *State v. Knapp*, 54 Wn. App. 314, 320-22, 773 P.2d 134, *review denied*, 113 Wn.2d 1022 (1989)). We are not inclined to adopt a rule that contravenes the reasonable policy choice behind the allocation of burdens in these types of defenses.

¶16 The common thread among similar affirmative defenses counsels in favor of a consistent approach in allocating the burden of proof. Given that claims of unconsciousness are often connected with claims of intoxication, voluntary or involuntary, Deer's approach would lead to inconsistency and confusion. If the defendant claims to have been unconscious because she was drugged, she bears the burden of proving the defense of involuntary intoxication by a preponderance of the evidence. If she claims her unconsciousness resulted from her voluntary use of drugs or alcohol, this provides no defense to a strict liability crime, as mental state is irrelevant. But, if she claims unconsciousness for no specified reason—she simply says, "I was asleep"—then under Deer's argument the State bears the

---

[7] Relatedly, if a defendant claims the "victim" caused her to engage in sexual intercourse by threat or use of force, she may seek to prove the defense of duress by a preponderance of the evidence. *See Riker*, 123 Wn.2d at 366-67. As noted, Deer refused the giving of a duress instruction. 2 RP (2/12/09) at 3-5.

[8] The court in *Swagerty* recognized that a defendant may still argue that a mental disease or defect rendered him unable to perceive the nature and quality of the act charged. 60 Wn. App. at 834. This analysis resonates with the analysis in *Utter* comparing the defense of automatism to insanity or diminished capacity. 4 Wn. App. at 141.

burden to disprove this assertion. We believe it makes more sense that the allowed defenses asserting unconsciousness be treated the same.[9]

¶17 The Court of Appeals did not address the similarity between Deer's claim and intoxication defenses but instead relied on this court's decision in *Eaton*, 168 Wn.2d 476. *Deer*, 158 Wn. App. at 862-65. Contrary to the Court of Appeals' interpretation, *Eaton* does not support the conclusion that a "sleep sex" defense must be disproved by the prosecution. *Eaton* involved a sentencing enhancement under RCW 9.94A.533(5) for possession of a controlled substance inside a jail. The question was the proper interpretation of this statute, specifically whether a defendant could be held liable for this strict liability offense when the State was responsible for bringing him into the enhancement zone. The court interpreted the statute not to contemplate criminal liability in this situation.

> [W]e attempt to construe statutes in a way that is consistent with their underlying purpose. [*State v.*] *Crediford*, 130 Wn.2d [747,] 755[, 927 P.2d 1129 (1996)]. As the Court of Appeals concluded, the State's application of the enhancement statute would lead "to an unlikely, absurd, and strained consequence, imposing a strict liability sentence enhancement for *involuntary* possession of a controlled substance in a county jail or state correctional facility." [*State v.*] *Eaton*, 143 Wn. App. [155,] 161[, 177 P.3d 157 (2008)]. Once Eaton was arrested, he no longer had control over his location. From the time of arrest, his movement from street to jail became involuntary: involuntary not because he did not wish to enter the jail, but because he was forcibly taken there by State authority. He no longer had the ability to choose his own course of action. Nor did he have the

---

[9] As noted, we are not insensitive to the concern that adult victims of juvenile crimes should not be prosecuted for offenses committed against them. But, the risk that an adult victim of rape will be wrongly prosecuted for child rape is minimized by the State's statutory obligation to consider *all of the evidence* in a case, including affirmative defenses, before making a charging decision. RCW 9.94A.411. Thus, the situation here is not fundamentally different from other situations in which the defense bears the burden of proving an exculpatory defense and the State must consider the evidence relating to this defense before it brings any charges.

ability through some other course of action to avoid entering the area that would increase the penalty for the underlying crime. We doubt the legislature intended to grant the police such broad authority to affect the defendant's punishment after arrest.

*Eaton*, 168 Wn.2d at 484-85 (footnote omitted).

¶18 Both the situation and the implications are different here. Liability for child rape is not "situational" in the way liability for being in an enhancement zone is (particularly when the defendant is under arrest and is transported into the enhancement zone *by the State*). *See id.* at 482. The concern in *Eaton* was the absurdity of interpreting RCW 9.94A.533(5) to impose liability for a circumstance within the State's control, rather than the defendant's. It is not at all clear that the holding in *Eaton* would extend beyond its unique facts—for example, to a situation in which the defendant claims he was asleep in a car that a friend drove into an enhancement zone.

¶19 The implications in this case are also different. The court in *Eaton* noted that the harm contemplated by enhancement zone statutes did not include the scenario in which the police were responsible for bringing a person possessing drugs into the zone. *Id.* at 485. In contrast, the harm contemplated by criminalizing rape of a child is precisely what occurred here: an adult had sexual intercourse with a child. The societal interest in preventing this harm is the same regardless of whether the defendant intended the harm or was even conscious it occurred. For this reason, Deer's "sleep sex" defense is much more akin to defenses such as unwitting possession of drugs or involuntary intoxication. It admits the harmful act occurred but offers an excuse.[10]

---

[10] During trial, the State recognized that Deer's defense would be a complete excuse to criminal liability. The prosecutor argued in closing that if Deer "was incapacitated, she would not be guilty" and if "she was actually forcibly raped by a person, obviously, there could be no criminal liability for it." 2 RP (2/12/09) at 50.

¶20 Moreover, as with similar affirmative defenses, proof of the proposition, "I was asleep" is far more likely to be within the defendant's knowledge and ability to establish. *See Riker*, 123 Wn.2d at 367. Deer herself recognizes this when she proposes that the burden of producing such evidence should be placed upon the defendant. Commentators have noted that claims of unconsciousness, somnambulism, and the like are unusual and somewhat counterintuitive and are best established by the party asserting them.

> Involuntary conduct is a statistical and subjective abnormality; the relevant facts are peculiarly within the knowledge of the accused; and where a harm has been caused by a defendant's act, it seems fair to require him to adduce evidence that the act was involuntary. This analysis suggests that for constitutional purposes involuntariness should be viewed as a general excuse rather than as a universal offense element.

2 PAUL H. ROBINSON, CRIMINAL LAW DEFENSES § 171(d) at 266 (1984) (footnote omitted). The Court of Appeals in *Utter* observed that this is one of the reasons courts allow claims of automatism or involuntariness as a defense. The defense is so unusual that it undercuts criminal liability. *See Utter*, 4 Wn. App. at 141. But, this does not mean that involuntary conduct *negates* the commission of a strict liability crime. Rather, as we said in *Bradshaw*, a defense of involuntariness exists to "ameliorate[ ] the harshness of a strict liability crime." *Bradshaw*, 152 Wn.2d at 538. In this instance, the burden of proof properly resides with the defendant.

## CONCLUSION

¶21 While we appreciate the logical distinction between the actus reus and mens rea components of criminal liability, there is more to reason than logic. The guiding principle of reason in this case is that Deer's claim of "sleep sex" is in reality an affirmative defense that does not negate any

element of the strict liability crime of child rape. While a defendant must be allowed to argue that her actions were involuntary, thus excusing her from criminal liability, we hold that it is the defendant's burden to prove this defense by a preponderance of the evidence. Accordingly, we reverse the Court of Appeals.

C. JOHNSON, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

MADSEN, C.J., concurs in the result only.

¶22 WIGGINS, J. (dissenting) — I cannot join the majority decision because it ignores the entire statutory scheme, ignores the legislative directive that the common law supplements our statutory law, conflicts with our conclusion only two years ago that at common law all crimes must include an element of voluntary or volitional action, and fixates instead on labeling rape of a child as a "strict liability" crime. I respectfully dissent.

*The Majority Ignores Legislative Intent*

¶23 The majority fails even to attempt to discern the legislative intent from the language of the child rape statute and related statutes. *See State v. Eaton*, 168 Wn.2d 476, 480, 229 P.3d 704 (2010); *State v. Bradshaw*, 152 Wn.2d 528, 531-32, 98 P.3d 1190 (2004). The majority steps out on the right foot by quoting RCW 9A.44.079 but quickly loses its way, focusing instead on "strict liability," a term never appearing in the statute.

¶24 Our opinion in *Bradshaw* illustrates the appropriate approach to statutory interpretation. *See Bradshaw*, 152 Wn.2d at 531-32. In *Bradshaw* we considered whether the crime of possession of controlled substances included an implied element of knowledge or intent. We noted that the legislature had amended the former possession statute to remove the element of intent, and later upon adoption of the

Uniform Controlled Substances Act, chapter 69.50 RCW, declined to include the requirement of the uniform act that possession must be knowing or intentional. *Id.* at 532-33. In light of this history, we concluded that the legislature deliberately omitted from the elements of possession of a controlled substance any requirement of knowledge or intention. *Id.* at 533-34. We also noted that the legislature had not acted to change the statute since we earlier interpreted it as not including knowledge or intent. *Id.* We concluded, "Given that the legislative history is so clear, we refuse to imply a mens rea element." *Id.* at 537.

¶25 Applying the approach to the statutory interpretation we followed in *Bradshaw*, we begin with the plain language of the applicable statute. The rape of a child in the third degree statute criminalizes sexual intercourse between a "victim" under the age of 16 and a "perpetrator" at least 4 years older than the victim:

> A person is guilty of rape of a child in the third degree when the person has sexual intercourse with another who is at least fourteen years old but less than sixteen years old and not married to the perpetrator and the perpetrator is at least forty-eight months older than the victim.

RCW 9A.44.079(1).[11] The majority ignores several key words in this statute that disclose legislative intent. First, the words "victim" and "perpetrator" suggest, at a bare minimum, that the older person must *do* something, i.e., must "perpetrate" the crime in order to be found guilty. While this language is at best unclear, it does suggest that a sleeping woman cannot be a perpetrator.

¶26 Second, the legislature chose the phrase "has sexual intercourse with another." This again suggests a legislative intent that the perpetrator must actually "have," or perform

---

[11] RCW 9A.44.073 criminalizes rape of a child in the first degree, defined similarly as having sexual intercourse but with a child less than 12 years old, while RCW 9A.44.076 criminalizes rape in the second degree of a child 12 or older but less than 14 years of age.

sexual intercourse, not simply be unconscious while sexual intercourse is performed upon her. *See United States v. McDonald*, 592 F.3d 808, 813, 814 (7th Cir. 2010) (interpreting WIS. STAT. § 948.02(2) as imposing strict liability on anyone who " 'has sexual contact or sexual intercourse' " with a person under 16 and concluding that "[t]he act of sexual intercourse or contact, of course, must be volitional"). The majority opinion completely ignores these highly suggestive words.

¶27 But that is not the only mistake the majority makes by declining to examine legislative intent. The meaning of a statute is not determined from its language alone but from all the terms and provisions of the act as they relate to the subject of the legislation, the nature of the act, the general object to be accomplished, and consequences that would result from construing the particular statute in one way or another. *In re Custody of E.A.T.W.*, 168 Wn.2d 335, 343, 227 P.3d 1284 (2010). We look to all that the legislature has said in the statute and related statutes that disclose legislative intent about the provision in question. *Id.* We look not only to the statute in which that provision is found, but to "related provisions, and the statutory scheme as a whole." *State v. Jacobs*, 154 Wn.2d 596, 600, 115 P.3d 281 (2005).

¶28 RCW 9A.44.079 is part of a larger chapter criminalizing sexual offenses. RCW 9A.44.050(1)(b) defines "second degree rape" to include having sexual intercourse "[w]hen the victim is incapable of consent by reason of being physically helpless or mentally incapacitated . . . ." The state of being " '[p]hysically helpless' " is defined to include being "unconscious." RCW 9A.44.010(5). The majority's interpretation would lead to an absurd result, which becomes apparent when considering the hypothetical case of a 15-year-old boy who slips a drug into a 19-year-old woman's drink and engages in sexual intercourse while she is unconscious. Under the majority's theory, the 19-year-old woman has committed rape of a child. But the 15-year-old boy would be guilty of second degree rape for having had

sexual intercourse with an unconscious victim. It would be absurd to consider the 19-year-old woman a victim of second degree rape and simultaneously a perpetrator of third degree rape of a child. We should avoid any interpretation that leads to an absurd result. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003).

¶29 The majority cavalierly assures us that when our hypothetical 19-year-old woman is drugged and raped by the 15-year-old boy and then charged with rape of a child, she can seek to convince the jury of the affirmative defense of involuntary intoxication. Majority at 736-37. Even worse, the majority claims that in the case of forcible rape of the woman by the 15-year-old boy, the woman is guilty of third degree rape of a child unless she can prove the defense of duress. *Id.* at 737 n.7. The majority has turned the law upside down: we do not blame victims and we do not require any defendant to prove innocence.

¶30 Yet another absurdity would arise under the majority's interpretation. RCW 9A.44.030(1) provides a defense to any prosecution under chapter 9A.44 RCW in which lack of consent based on the victim being physically helpless: the defendant can prove that he or she reasonably believed that the victim was not physically helpless. Under the majority's interpretation, R.R. could defend a charge of second degree rape on the theory that he reasonably believed Lindy Deer was not unconscious, but Deer would still be guilty of third degree rape of a child even though she was actually asleep and unconscious.

### *The Conflict with the Common Law and* State v. Eaton

¶31 Even if we were to ignore the absurdities of the majority's interpretation, we must consider the legislature's directive that the common law supplements the criminal law of our state: "The provisions of the common law relating to the commission of crime and the punishment thereof, insofar as not inconsistent with the Constitution and statutes of this state, shall supplement all penal statutes of this state . . . ." RCW 9A.04.060.

¶32 Under the common law, proof of the actus reus of a crime requires proof of volition. *Eaton*, 168 Wn.2d at 480-82. Although at common law crimes include both a mens rea and an actus reus, the legislature has authority to create crimes with no mens rea: "Though they are disfavored, these 'strict liability' crimes criminalize unlawful conduct regardless of whether the actor possesses a culpable mental state." *Id.* at 481.

¶33 However, *every* crime includes an actus reus, and there is a " 'certain minimal mental element required in order to establish the actus reus itself.' " *Id.* at 482 (quoting *State v. Utter*, 4 Wn. App. 137, 139, 479 P.2d 946 (1971)). This is the element of volition. We were very clear in *Eaton* that volition is part of actus reus, not mens rea. *Id.*

¶34 This distinction is crucial to resolving this case and compels the conclusion that volition is an implied element of rape of a child. At the common law, people were not punished for acts they did not voluntarily commit. A person should not have to prove involuntary action to avoid criminal liability. In our system, which presumes innocence, the State bears the burden of proving all requisites to criminal liability; the defendant does not have the burden of *disproving* them.

¶35 The majority impliedly admits that its opinion conflicts with *Eaton* when it seeks to limit *Eaton* to an irrelevant factual distinction, arguing that the issue was whether the sentence enhancement for possessing controlled substances in a jail could be imposed "when the State was responsible for bringing him into the enhancement zone." Majority at 738. This attempted limitation unpersuasively reinvents *Eaton*; the majority ignores *Eaton*'s lengthy discussion of the common law principle that the actus reus includes the element of volition or voluntariness. 168 Wn.2d at 480-83. The entire dispute between the *Eaton* majority and dissent was whether crimes (specifically sentence enhancements) include the common law element of volition, not who brought the

defendant into the jail. *Compare Eaton* majority, 168 Wn.2d at 482-83, *with Eaton* dissent, *id.* at 488, 495-96. And if the majority were correct that actus reus does not require a voluntary act, it would make no difference how the defendant arrived at the jail, voluntarily or involuntarily.

¶36 We decided *Eaton* two years ago in 2010. We are bound to follow our past precedents. *See Keene v. Edie*, 131 Wn.2d 822, 831, 935 P.2d 588 (1997) (honoring the principle of stare decisis " 'promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process' " (quoting *Payne v. Tennessee*, 501 U.S. 808, 827, 111 S. Ct. 2597, 115 L. Ed. 2d 720 (1991))). We said in *Eaton* that actus reus includes some element of voluntariness; today the majority says the opposite. How are bench, bar, and the public to know which is correct? We should stand by what we said in *Eaton* or else forthrightly overrule it. *Eaton* may be factually different from this case, but the principles established there directly control our result today. *See Eaton*, 168 Wn.2d at 480-82. If we no longer accept those principles, so be it. But if that is so, we should admit it rather than offering unpersuasive distinctions.

### *Affirmative Defenses*

¶37 The majority argues that lack of volition is merely an affirmative defense and that volition is not an implied part of actus reus and thus an element of third degree child rape. The majority claims that the Court of Appeals in *Utter*, 4 Wn. App. 137, held that lack of volition is only an affirmative defense. Majority at 733-34. It is true that *Utter* refers to lack of volition as a "defense," but it never uses the term "affirmative defense" and never addresses the burden of proof, whether upon the prosecution as part of the offense or on the defendant as admitting the offense but offering an excuse. However, *Utter does* support Deer's theory that actus reus incorporates an element of volition:

The actus reus is the culpable act itself, the mens rea is the criminal intent with which one performs the criminal act. However, the mens rea does not encompass the entire mental process of one accused of a crime. There is a certain minimal mental element required in order to establish the actus reus itself. This is the element of volition.

*Id.* at 139. *Utter* also holds that an unconscious act is not a criminal act: "An 'act' committed while one is unconscious is in reality no act at all. It is merely a physical event or occurrence for which there can be no criminal liability." *Id.* at 143.

¶38 Without any more authority than *Utter*, which contradicts its position, the majority asserts that Deer's volition claim "is properly treated as an affirmative defense, much like claims of involuntary intoxication, insanity, or unwitting possession."[12] Majority at 733. This is incorrect. In the intoxication statute, the legislature refers only to "voluntary intoxication." RCW 9A.16.090. The term "involuntary intoxication" never appears in Washington's statutes. We have stated that when crimes require proof of a mental state, RCW 9A.16.090 allows intoxication, voluntary or not, to be taken into account in determining a mental state. *State v. Mriglot*, 88 Wn.2d 573, 576, 564 P.2d 784 (1977); *see* RCW 9A.16.090. In contrast, when crimes lack a mental element, we have indicated that unlike voluntary intoxication, involuntary intoxication "may absolve the defendant of any criminal responsibility." *State v. Hutsell*, 120 Wn.2d 913, 920, 845 P.2d 1325 (1993). Used in the nonmental element context, we stated that the term "involuntary intoxication" should be narrowly construed, *id.*, and have opted to equate it to the insanity defense,

---

[12] The majority tries to analyze around *Utter*, stating that it "does not foreclose treating volition defenses as affirmative defenses." Majority at 735 n.6. In fact, in the context of unconscious acts, that is exactly what *Utter* forecloses. 4 Wn. App. at 143. Rather than acknowledging this, the majority parses *Utter*'s words by stating Deer's case is about the burden of proving criminal liability, ignoring that *Utter* states unequivocally that criminal liability simply does not exist for unconscious acts. *See id.*

stating that an involuntarily intoxicated defendant "is unable to perceive the nature and quality of his act or to tell right from wrong with reference to the act."[13] *Mriglot*, 88 Wn.2d at 576-77. Insanity was specifically declared to be an affirmative defense by the legislature. RCW 9A.12.010. The legislature has never declared volition to be an affirmative defense; rather, as discussed above, the legislature incorporated into our law the common law principle that volition is part of the actus reus. As for unwitting possession of controlled substances, we have held that the legislature deliberately removed any element of volition from the crime, leaving lack of volition or knowledge as an affirmative defense. *Bradshaw*, 152 Wn.2d at 532-34.

¶39 Unable to point to any indication that metamorphosing the common law element of volition into an affirmative defense was ever intended by the legislature, the majority simply lumps volition together with the other defenses it deems similar. Our role is not to superimpose our own preferences on the legislative scheme but to discern the legislative intent, which fails to support the majority's policy choice.

### Strict Liability

¶40 Finally, the majority bases its decision on its conclusion that volition is not required because third degree rape of a child is a "strict liability" offense. Majority at 731, 734, 735, 737, 740. This argument is based on a misunderstanding: the "strict liability" element of rape of a child is knowledge of the child's age, not lack of volition to have sexual intercourse.

¶41 The majority states, "As a strict liability crime, child rape in the third degree requires no proof of mens rea."

---

[13] Without analysis, the Court of Appeals has stated that "temporary insanity caused by involuntary intoxication" places the burden of establishing involuntary intoxication, like temporary insanity, on the defendant by preponderance of the evidence. *State v. Gilcrist*, 25 Wn. App. 327, 328, 606 P.2d 716 (1980). This court has never considered this issue.

Majority at 731 (citing *State v. Chhom*, 128 Wn.2d 739, 741-43, 911 P.2d 1014 (1996)). But as discussed above, volition is not part of mens rea; it is an aspect of the actus reus, the action itself. One need not intend to have sexual intercourse with a child—the age of the victim is the strict liability aspect of the crime—but one must exercise some volition to have sexual intercourse. Labeling the offense as "strict liability" does not eliminate the common law requirement of volition.

¶42 The majority fails to examine the precedents on which we relied in *Chhom* and misunderstands the meaning of strict liability. To support strict liability, we cited *State v. Geer*, 13 Wn. App. 71, 75-76, 533 P.2d 389, *review denied*, 85 Wn.2d 1013 (1975), which in turn cites *State v. Smith*, 3 Wn.2d 543, 101 P.2d 298 (1940) and *United States v. Thornton*, 162 U.S. App. D.C. 207, 498 F.2d 749 (1974). We held in *Smith*, "We think whatever criminal intent is necessary to be shown in the crime of rape is shown by the doing of the acts constituting the offense." 3 Wn.2d at 553. *Thornton* similarly holds that no specific intent is required to prove rape: "the crime of rape requires no intent other than that indicated by the commission of the acts constituting the offense." 498 F.2d at 753.

¶43 *Smith* and *Thornton* involved rape, not child rape. But both hold that the required intent is the intent to do the acts constituting the offense. When carried into child rape, the strict liability lies in the age of the victim and the perpetrator, not the absence of volition in the actus reus. See also *McDonald*, 592 F.3d at 814, interpreting Wisconsin's child rape statute:[14]

Wisconsin's crime of second-degree sexual assault of a child is a strict-liability offense—no *mens rea* is required with respect to the age of the victim, and neither the victim's consent nor a

---

[14] Just as our statute defines the crime to occur when a person "has sexual intercourse" with a child, RCW 9A.44.079(1), Wisconsin's statute defines the crime when a person "has sexual contact or sexual intercourse" with a child. Wis. Stat. § 948.02(2).

mistake or misrepresentation regarding the victim's age is relevant. The act of sexual intercourse or contact, of course, must be volitional, but there is no *mens rea* requirement with respect to the statutory element that makes that conduct illegal—the age of the victim.

(Citations omitted.)

### *Conclusion*

¶44 Because the majority fails to discern the legislative intent, ignores the legislature's direction to apply the common law when not inconsistent with the words of the statute, creates a conflict with our recent decision in *Eaton*, improperly assumes the role of the legislature when it creates an affirmative defense, and misapplies the notion of "strict liability" crimes, I would affirm the Court of Appeals. I respectfully dissent.

ALEXANDER, J. PRO TEM., concurs with WIGGINS, J.