FILED
COURT OF APPEALS
DIVISION II

2013 DEC 20 AM 8: 37

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 43333-8-II |
| | (Consolidated with No. 43433-4-II) |
| Respondent, | |
| v. | |
| DAVID DOYLE FLYNN, | UNPUBLISHED OPINION |
| Appellant. | |

HUNT, J. – David Doyle Flynn appeals his jury trial conviction for unlawful possession of a controlled substance (methamphetamine) with intent to deliver. He argues that the State committed misconduct when it misstated the burden of proof in closing argument; he also assigns error to the trial court's overruling his objection to the State's rebuttal argument and denial of his request for a curative instruction. In a pro se statement of additional grounds for review[1] (SAG), Flynn also (1) contends that the trial court erred in denying his CrR 7.8 motion to dismiss his conviction, (2) challenges several of the trial court's CrR 3.6 suppression hearing findings of fact and conclusions of law, and (3) contends that his trial counsel provided ineffective assistance on several grounds. Flynn's SAG issues do not merit relief. Agreeing that the State committed prejudicial misconduct in closing argument, however, we reverse Flynn's

---

[1] RAP 10.10.

conviction for unlawful possession of a controlled substance with intent to deliver and remand for retrial.

## FACTS

### I. TRAFFIC STOP; DWLS ARREST; METHAMPHETAMINE

On October 13, 2011, Thurston County Deputy Sheriffs Carrie Nastansky and Ben M. Elkins were on patrol when they were unable to read the license plate of an oncoming vehicle driven by David Doyle Flynn. Nastansky turned the patrol car to follow Flynn. Failing to signal 100 feet before the turn, Flynn turned his vehicle into a driveway, got out, and started walking toward the residence. Meanwhile, Nastansky had activated the patrol car's lights and followed Flynn into the driveway. Originally intending to cite Flynn for failure to signal,[2] the deputies arrested him for driving with a suspended driver's license (DWLS).

Incident to his arrest, the deputies searched Flynn's person and his vehicle. They found drug related materials, including baggies containing a substance that field tested positive for methamphetamine; 50 or more small, unused baggies; and a digital scale.[3] After being advised of his Miranda[4] rights, Flynn told Elkins that the methamphetamine was for his personal use.

### II. PROCEDURE

The State charged Flynn with unlawful possession of a controlled substance, methamphetamine, with intent to deliver. Flynn pleaded not guilty.

---

[2] RCW 46.61.305(2).

[3] The record is not clear about which items the deputies found in which places.

[4] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

## A. Suppression Hearing

Flynn moved to suppress the evidence found on his person and in his vehicle,[5] arguing that (1) the traffic stop was pretexual, (2) the search of his person was not permissible under *Terry*,[6] and (3) the vehicle search was impermissible under *Arizona v. Gant*.[7] Flynn's motion did not identify exactly what evidence he wanted the trial court to suppress or where the deputies had discovered it. The State responded that Flynn "had two baggies of methamphetamine, many empty baggies used for packaging controlled substances, and scales on his person"; but it did not identify the evidence the deputies had found during the vehicle search or other evidence found during the search of Flynn's person. Clerk's Papers (CP) at 24. Nastansky, Elkins, and Flynn testified at this hearing.

### 1. Nastansky's testimony

At the suppression hearing, Nastansky testified that she had been on patrol with Elkins, her field training officer, "look[ing] for traffic stops and anything else that [came] to [her] attention," and running license plates to see if there was "any reason for [her] to be able to stop the vehicle," such as the vehicle's having been reported stolen or an expired registration. Verbatim Report of Proceedings (VRP) (Dec. 19, 2011) at 8, 10. She had turned the patrol car around to follow Flynn because she had been unable to read his vehicle's license plate. Flynn

---

[5] Flynn also moved to suppress his statements to the deputies. The trial court denied this motion. On appeal, Flynn does not challenge the trial court's admission of his statements.

[6] *Terry v. Ohio*, 392 U.S. 1, 30-31, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

[7] *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009).

then "quickly accelerated and turned into a driveway" without first activating his turn signal until he was about 25 feet from the driveway. VRP (Dec. 19, 2011) at 10. Nastansky observed Flynn's turn signal flash twice before he turned. She turned on her emergency lights as she followed Flynn into the driveway, intending to initiate a traffic stop for failure to signal 100 feet before turning. But Flynn got out of his vehicle and started walking towards the residence.

Elkins "yelled" at Flynn, who returned to the passenger side of his vehicle and started to smoke a cigarette. Nastansky asked Flynn for his license, registration, and insurance. Flynn, who was "very nervous and fidgety," responded that his driver's license was suspended. VRP (Dec. 19, 2011) at 14. After confirming that Flynn's license was suspended and that there were also outstanding warrants for his arrest, Nastansky arrested him for driving with a suspended license.

When Nastansky searched Flynn's person incident to his arrest, she found (1) "a larger baggie containing several small, about two-by-two-inch sizes of . . . baggies," these baggies were unused, VRP (Dec. 19, 2011) at 15; and (2) "another larger baggie containing a crystallized substance" that she recognized as methamphetamine, VRP (Dec. 19, 2011) at 17. She further testified that she did not find a scale "on his person." VRP (Dec. 19, 2011) at 17.

2. Elkins' testimony

Elkins also testified that Flynn had failed to signal within 100 feet of his turn into the driveway. VRP (Dec. 19, 2011) at 40. Elkins similarly described the evidence that Nastanksy had found on Flynn's person: (1) "[a] few grams" of what was later determined to be methamphetamine, and (2) small baggies commonly used to package methamphetamine "for sale or use." VRP (Dec. 19, 2011) at 45. Elkins also testified that he searched Flynn's vehicle,

apparently incident to arrest; but he was not asked and did not mention what items he found in the vehicle. Similarly, Elkins did not mention where he had found the scale because neither counsel asked about it.

### 3. Flynn's testimony

Flynn testified that immediately before his arrest, he had been driving around to find some tires a friend had seen for sale on the side of the road and had pulled into the driveway to ask about the tires. Flynn had seen the patrol car pass him and then turn around, at which point he had been about to turn into the driveway. He could not recall "[e]xactly when" he signaled before turning into the driveway, but he stated that the signal "blinked a couple of times" before he started to slow down for the turn. VRP (Dec. 19, 2011) at 74. Flynn denied having seen the patrol car's flashing lights until he was out of his vehicle "just starting [his] conversation with the lady of the residence." VRP (Dec. 19, 2011) at 74.

Flynn asserted that when he asked the deputies why they had pulled in behind him, they did not mention his failure to signal; nor did they ticket him for failing to signal. He also asserted that he was away from his vehicle with no access to it when the deputies approached him and that he did not consent to their searching his vehicle. Flynn admitted that he did not have a valid driver's license at the time of the stop, that he had nine prior convictions for driving without a license, and that he had two outstanding arrest warrants at the time of the stop. Flynn also admitted that the officers had found drugs and the empty bags found on his person.

### 4. Argument and ruling

Flynn argued that the vehicle stop was improper, that it was a "fishing expedition" and a pretexual stop, and that the trial court should suppress his statements and the evidence seized

from both his person and his vehicle. VRP (Dec. 19, 2011) at 106. The State conceded that the vehicle search was not lawful and, therefore, that any evidence seized from the vehicle was not admissible. But the State argued that the stop was lawful to enforce traffic laws, that the search of Flynn's person was lawful incident to his arrest for DWLS, that the evidence seized from Flynn's person was admissible, and that his statements were voluntary and also admissible.

Neither party specifically identified for purposes of the suppression hearing what evidence had been seized from Flynn's person. The trial court orally suppressed the evidence from the vehicle search, and ruled admissible the evidence from the personal search and Flynn's statements[8]; it noted that "discovery of [the] drugs" was admissible, without mentioning any other specific evidence. VRP (Dec 19, 2011) at 119. One of the trial court's later written findings, however, stated that Nastansky had found the baggie containing the smaller baggies and another bag "which contained methamphetamine" on Flynn's person. CP at 44 (Finding of Fact (FF) 1.12).

## B. Trial

### 1. Nastansky's testimony

At trial, Nastansky testified that after she and Elkins arrested Flynn, she searched Flynn and found (1) a larger baggie containing 50 to 100 smaller, two-inch by two-inch plastic baggies; (2) two baggies of what appeared to be "residue powder"; (3) a glass pipe with "residue on it";

---

[8] The trial court did not mention the scale in the suppression order's findings or conclusions of law. In light of Nastansky's suppression hearing testimony that she did not find a scale on Flynn's person, however, we infer that it must have appeared to the trial court that the scale was among the items seized from Flynn's truck and, therefore, suppressed along with the other items from the truck.

and (4) a digital scale with "residue" on it. VRP (Jan. 9, 2012) at 34, 36, 37. She also testified that during the search Flynn had admitted that he was carrying drugs. Flynn did not object to this testimony.

On cross-examination, Flynn attempted to impeach Nastansky with her contrary suppression hearing testimony that she did not find the digital scale on Flynn's person. Acknowledging this previous contrary testimony, Nastansky responded that when she later read her report, she realized she had found the digital scale on Flynn's person.[9] Nastansky further testified, however, that she did not recall finding any cash, notes, or a cellular telephone on Flynn when she searched him.

### 2. Elkins' testimony

Elkins similarly testified that when Nastansky searched Flynn, she had found: (1) "several [small, unused] plastic bag[gie]s"; (2) three baggies "that had a little bit of residue with them that [was] consistent with methamphetamine"; (3) two more baggies containing "a shard crystal substance" that field tested positive for amphetamines; and (4) a digital scale. VRP (Jan. 9, 2012) at 78, 79. Elkins also testified that Flynn told him that the drugs were for his "personal use." VRP (Jan. 9, 2012) at 82. Elkins further stated that the items they found on Flynn's person were "consistent with the distribution of that product." VRP (Jan. 9, 2012) at 82.

---

[9] The State attached a copy of Nastansky's October 13, 2011 incident report to its response to Flynn's CrR 7.8 motion. In that report, Nastansky states that she found the digital scale in the same pocket in which she found the two baggies containing a substance that later tested positive for methamphetamine.

On cross-examination, Elkins admitted that he had not mentioned the digital scale during the previous hearing when counsel asked what items he had observed Nastansky find when she searched Flynn. Elkins explained, however, that no one had specifically asked him about the digital scale. Elkins conceded, however, that drug users, as well as distributors, may also carry scales.

### 3. Other testimony

The State's forensic specialist testified that the substance found in the baggies and on the scale was methamphetamine. Flynn called no witnesses.

### 4. Jury instructions

The trial court instructed the jury on unlawful possession of a controlled substance with intent to deliver and, at Flynn's request, the lesser included offense of simple unlawful possession of a controlled substance. The trial court also instructed the jurors that it was their duty to apply the law as stated in the court's instructions and that they "must disregard any remark, statement, or argument that is not supported by the evidence or the law in [the court's] instructions. CP at 53 (Jury Instruction 1).

The trial court instructed the jury about the State's burden of proof and the reasonable doubt standard as follows:

> The defendant has entered a plea of not guilty. That plea puts in issue every element of each crime charged. *The State is the plaintiff and has the burden of proving each element of the crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists as to these elements.*
> A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt.
> *A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a*

8

*reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt.*

CP at 56 (Jury Instruction 3) (emphasis added). The trial court did not, however, instruct the jury about the meaning of the phrase "abiding belief."[10] *See* CP at 56.

### 5. Closing arguments; verdict

In its closing argument, the State reiterated that it had the burden to prove every element of the charged crime beyond a reasonable doubt. But it also repeatedly argued that there was no evidence contradicting certain evidence. The State contended that the core issue was whether there was evidence that Flynn intended to deliver the drugs. In particular, the State argued that the scale and the unused baggies proved that Flynn possessed the drugs with intent to deliver.

The State further argued that Flynn had not presented any explanation for carrying the baggies on his person other than the intent to deliver that their sheer number suggested:

> So you're being given a couple red herrings and I'd ask you to be very careful about following those red herrings, because the Defense—this evidence was found on his person. It was found on him. *They have to have some way to explain—some out, some way to argue to you reasonable doubt.* And I submit that they're doing that by trying to paint the officers as being inconsistent or making mistakes, or trying to point to evidence that isn't there. But it isn't necessary. The bottom line is that Mr. Flynn had these things on his possession, on his person. There's no indication that they were anybody else's but his.
> There's indication that he's a meth user, but the big thing is these baggies. There's a lot of them. They're ready to be filled, and *there's no explanation why you would have these if you weren't going to deliver.*

VRP (Jan. 10, 2012) at 137-38 (emphasis added). Flynn did not object at this time.

---

[10] The parties' proposed instructions, if any, are not part of the record on appeal. Thus, we do not know whether either party asked the trial court to define "abiding belief" for the jury.

9

Instead, in his closing argument, Flynn challenged the State's "red herring"[11] argument as an attempt to shift the burden of proof to him:

> Ladies and gentlemen, just because something smells fishy doesn't make it a red herring. There are all kinds of things that smell. Red herrings are only one of them. And in this case, there is more than one explanation. And, you know, *the prosecutor was suggesting to you that the Defense has to explain something, trying to shift the burden over to our side, to explain and make up for some things that they couldn't explain.*

VRP (Jan. 10, 2012) at 139 (emphasis added).

Flynn argued in closing that although the jury could convict him of the lesser included offense of possession, the State had failed to show that he possessed the drugs with intent to deliver and, therefore, the jury should acquit him of that charge. In support of convicting him of only the lesser included possession offense, Flynn focused on the deputies' previous inconsistent testimonies about whether they had found a digital scale on his person; and he argued that a drug *user* may also carry scales and packaging for reasons not related to distribution, such as personal use.

In rebuttal, the State denied attempting to shift the burden of proof to Flynn, reiterating that it was required to prove each element of the offense beyond a reasonable doubt. Nevertheless, the State again highlighted Flynn's failure to provide an explanation for the empty baggies found on his person:

> There is still *no reasonable explanation for these baggies.* And this is the smoking gun in this case. *The Defense can explain away a lot of things, but there's still no reasonable explanation why a [drug] user would have these baggies.* And I would ask you to consider this evidence with a lot of importance. *There's no explanation. There's no reasonable doubt.*

---

[11] VRP (Jan. 10, 2012) at 137.

You have a jury instruction, which I don't know that it's extremely helpful, but it talks about reasonable doubt. [Defense counsel] used a phrase, "beyond a moral certainty," but that's not the definition of reasonable doubt. A reasonable doubt, according to jury instruction number three, is one for which a reason exists and may arise from the evidence or lack of evidence. It's such a doubt as would exist in the mind of a reasonable person after fully, fairly and carefully considering all of the evidence or lack of evidence. If, from such consideration, you have an abiding belief in the truth of the charge, you're satisfied beyond a reasonable doubt.

It doesn't say anything about moral certainty. It does talk about an abiding belief in the truth of the charge. And that's tough language. That's abiding belief. *What's an abiding belief? I sometimes hear from a jury, well, we think you it did—this is after an acquittal. We think he did it; we just don't think there is enough proof beyond a reasonable doubt. I submit to you, if you think he did it, that's an abiding belief in the truth of the charge.*

VRP (Jan. 10, 2012) at 151-52 (emphasis added).

At this point, Flynn objected, arguing that the State had "misstate[d] the jury instruction" and "the law in the state of Washington" and that it was also attempting to shift the burden of proof to the defense. VRP (Jan. 10, 2012) at 152. Flynn asked the trial court to give a curative instruction. The trial court responded:

I guess what I heard is [the State] reading from the instruction on reasonable doubt, and I would ask the jury to look at that instruction when you attempt to understand the burden of proof in this case.

In terms of shifting the burden here, I've heard a lot of argument. *I haven't heard anything from the State that asks the jury to shift the burden to the Defense. So I'm going to overrule the objection to that.*

VRP (Jan. 10, 2012) at 152-53 (emphasis added). The State continued its rebuttal as follows:

*So if you have an abiding belief in the truth of the charge, that means that you believe that he did it.* You've heard all of the evidence, and after hearing all the evidence, if it's your belief that he did this, you've got an abiding belief in the truth of the charge, the charge being possession with intent to deliver.

If you believe, having heard the evidence, that *you think he was planning to deliver* this methamphetamine based on those baggies and the other evidence

11

and testimony, I'd ask you to come back with a verdict of guilty on the original charge, which is possession with intent to deliver. Thank you.

VRP (Jan. 10, 2012) at 153 (emphasis added).

The jury found Flynn guilty of unlawful possession of a controlled substance with intent to deliver.

### 6. CrR 7.8 motion

Pro se, Flynn filed a CrR 7.8 motion to vacate his conviction on grounds of fraud, misrepresentation, or misconduct of an adverse party based on the deputies' testimonies differing between the suppression hearing and the trial. The trial court denied the motion. Flynn appeals his conviction and the trial court's denial of his CrR 7.8 motion, which we have consolidated.

## ANALYSIS

### I. PROSECUTORIAL MISCONDUCT

Flynn argues that the State misstated the law and "minimized" the burden of proof when it argued in closing that if the jury merely thought Flynn was guilty, that was an "abiding belief in the truth of the charge." Br. of Appellant at 13. He further argues that this error was "further exacerbated by the court's somewhat cavalier response that implie[d] that what the prosecutor argued is what the jury instruction says or means." Br. of Appellant at 13. We hold that the following circumstances created reversible prejudicial error: (1) the State's scant evidence of intent to deliver; (2) the trial court's overruling Flynn's objection to the State's closing argument misstatement of reasonable doubt and attempt to shift the burden of proof (by asserting that the defense had failed to provide "a reasonable explanation why a [drug] user would have these

12

baggies")[12]; and (3) closing argument as a whole, including Flynn's objection and the trial court's response. Accordingly, we reverse Flynn's conviction for possession of methamphetamine with intent to deliver.

### A. Standard of Review

A prosecutor is a quasi-judicial officer of the court, charged with the duty of ensuring that an accused receives a fair trial. *See State v. Huson*, 73 Wn.2d 660, 663, 440 P.2d 192 (1968), *cert. denied*, 393 U.S. 1096 (1969); *State v. Boehning*, 127 Wn. App. 511, 518, 111 P.3d 899 (2005). To prevail on a claim of prosecutorial misconduct, Flynn must show "'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'" *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008) (quoting *State v. Hughes*, 118 Wn. App. 713, 727, 77 P.3d 681 (2003), *review denied*, 151 Wn.2d 1039 (2004)). Flynn must demonstrate prejudice by proving that "'there is a substantial likelihood [that] the instances of misconduct affected the jury's verdict.'" *Magers*, 164 Wn.2d at 191 (alteration in original) (quoting *State v. Pirtle*, 127 Wn.2d 628, 672, 904 P.2d 245 (1995), *cert. denied*, 518 U.S. 1026 (1996)).

A prosecutor's argument misstating, minimizing, or "trivialize[ing]" the law regarding the burden of proof can be improper. *See State v. Johnson*, 158 Wn. App. 677, 685, 243 P.3d 936 (2010), *review denied*, 171 Wn.2d 1013 (2011). But we review a prosecutor's allegedly improper remarks during closing argument "within the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury

---

[12] VRP (Jan. 10, 2012) at 151.

instructions." *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003) (citing *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997), *cert. denied*, 523 U.S. 1007 (1998)). We review for an abuse of discretion a trial court's ruling on alleged prosecutorial misconduct during closing argument. *State v. Stenson*, 132 Wn.2d 668, 718, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998).

### B. Misstatement of Law

Flynn argues that the State's rebuttal argument misstated the law, in particular the prosecutor's misstating the reasonable doubt standard by explaining "an abiding belief in the truth of the charge" as "if you think he did it, that's an abiding belief in the truth of the charge." VRP (Jan. 10, 2012) at 151, 152. We agree with Flynn that the State's analogizing an "abiding belief" to merely "think[ing]" the defendant is guilty is a serious misstatement of the law, VRP (Jan. 10, 2012) at 152, in that a person can "think" a defendant is guilty yet also understand that the State has failed to prove all elements of the charged crime beyond a reasonable doubt.

Flynn also asserts that "the prosecutor's misconduct minimized the State's burden of proof and in the process ensured that Flynn did not receive a fair trial." Br. of Appellant at 15. But he fails to develop this argument like he did for his reasonable doubt misstatement argument. We note, however, as defense counsel argued below in objecting to the State's rebuttal argument, that the prosecutor improperly shifted the burden of proof when he underscored to the jury that Flynn had failed to offer an innocent explanation for his possession of so many baggies, which the prosecutor further argued, therefore, proved Flynn's intent to deliver beyond a reasonable doubt.

14

### C. Prejudice

We next address whether the prosecutor's misstatements of the law were so prejudicial in the context of the whole trial as to create a substantial likelihood that they affected the jury's verdict. Flynn contends that the prosecutor's misstatements were exacerbated by the trial court's dismissive comments in overruling his objection and by its refusal to give the jury a curative instruction. We agree.

Although Flynn admitted that he had drugs and baggies on his person, he never similarly admitted any intent to deliver. Moreover, the State's only evidence of intent to deliver was circumstantial at best, limited to Flynn's possession of multiple smaller, unused baggies and the digital scale, about which the deputies had presented inconsistent testimonies, including an initial denial that it had been found on Flynn's person; and the officer who searched Flynn incident to his arrest had found no other indicators of intent to sell drugs such as cash, notes, or cellular telephone. This relative weakness of evidence of intent to deliver amplified the prejudice created by the prosecutor's misstatements of the law, in particular his (1) misstatement of what it takes for a jury to have a reasonable doubt, and (2) *repeatedly* emphasizing that Flynn had failed to offer evidence explaining certain evidence, such as possessing the baggies, a burden that the law did not place on Flynn. *See State v. Deer*, 175 Wn.2d 725, 733, 287 P.3d 539 (2012) ("The defendant bears *no burden* to disprove the elements of a crime."), *cert. denied*, 133 S. Ct. 991 (2013).

Other trial circumstances further amplified this prejudice. Although the trial court instructed and the parties repeated that the State was required to prove each element beyond a reasonable doubt, the State nevertheless strongly argued to the jury that they need only "think"

that Flynn was guilty in order to meet this required standard of proof. The trial court could have cured these misstatements of the law with the cautionary instruction that Flynn requested, but it did not do so. On the contrary, the trial court's remarks while overruling Flynn's objection inadvertently suggested to the jury that the State's arguments had been *correct* statements of the law, when actually they had not.

We acknowledge the well-settled presumption that the jury followed the trial court's instructions, including the standard instruction given here that the jury should not take counsel's argument as statements of the law but rather should rely on the trial court's written instruction. *State v. Russell*, 125 Wn.2d 24, 84-85, 882 P.2d 747 (1994) (citing *State v. Swan*, 114 Wn.2d 613, 661-62, 790 P.2d 610 (1990), *cert. denied*, 498 U.S. 1046 (1991)), *cert. denied*, 514 U.S. 1129 (1995). But here, the cumulative effect of the following circumstances created a substantial likelihood that the prosecutorial misconduct affected the jury's finding Flynn guilty of unlawful possession of a controlled substance with intent to deliver, despite the trial court's later proper instructions: (1) the scant evidence of intent to deliver, (2) the prosecutor's misstatements of the law in closing argument, and (3) the trial court's refusal to correct these misstatements and its comments that it saw nothing wrong with the prosecutor's characterization of the burden and standard of proof.[13] Therefore, we reverse Flynn's conviction for possession with intent to distribute.

---

[13] If we presume that the jury followed the trial court's instructions on the law, then it is reasonable to conclude that the jury also likely followed the trial court's ratified version of the law presented by the prosecutor on these critical burden and standard of proof points.

## II. SAG Issues[14]

Flynn challenges the trial court's CrR 3.6 ruling, arguing that substantial evidence does not support its findings of fact 1.4, 1.5, and 1.14 and that the findings do not support conclusions of law CL 2.2, 2.3, 2.6, and 2.8. We disagree.

"We review a trial court's denial of a CrR 3.6 suppression motion to determine whether substantial evidence supports the trial court's challenged findings of fact and, if so, whether the findings support the trial court's conclusions of law." *State v. Cole*, 122 Wn. App. 319, 322-23, 93 P.3d 209 (2004). Substantial evidence is evidence in sufficient quantity to persuade a fair-minded person of the truth of the finding. *State v. Barnes*, 158 Wn. App. 602, 609, 243 P.3d 165 (2010). We defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004), *abrogated in part on other grounds by Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

Flynn challenges the following CrR 3.6 findings of fact:

1.4     After turning around to catch up to the vehicle, Deputy Nastansk[y] observed the vehicle accelerate, then turn into a private driveway. The vehicle's turn signal was not activated 100 feet prior to making the turn, and only blinked twice before turning;

---

[14] Because we reverse Flynn's conviction based on prosecutorial misconduct in closing argument, we need not address his SAG claim that the trial court erred in denying his CrR 7.8 motion to vacate based on other alleged prosecutorial misconduct in offering the digital scale into evidence at trial. Similarly, we need not address his other SAG claim that trial counsel rendered ineffective assistance in refusing to investigate or to obtain evidence Flynn had discussed with him, failing to interview witnesses, and failing to object to admission of the scale into evidence.

1.5    Deputy Nastansk[y] activated her emergency lights prior to the driver exiting the vehicle;

. . .

1.14    Neither Deputy Nastansky [n]or Deputy Elkins was familiar with the defendant, or had any reason to suspect that he was engaged in criminal activity other than the traffic violation for failing to signal 100 feet prior to turning.

CP at 44. Nastansky's and Elkins' suppression hearing testimonies support each of these findings: Nastansky testified that (1) after she turned her patrol car around, Flynn accelerated and turned into a driveway after activating his turn signal approximately 25 feet before the turn; (2) she activated her emergency lights just as Flynn was getting out of his car; and (3) she knew nothing about Flynn when she and Elkins stopped him, which testimony Elkins corroborated. Furthermore, there was no evidence that, at the time of the traffic stop, either deputy suspected Flynn of any criminal activity, other than his failure to signal properly. That Flynn's suppression hearing testimony differed to some degree (on the factual issue of where the digital scale was found) does not undermine the trial court's findings of fact about the officers' reasons for the stop because we leave witness credibility determinations to the trial court. *See Thomas*, 150 Wn.2d at 874-75.

Flynn also challenges four of the trial court's conclusions of law. First, he challenges conclusion of law 2.2: "Deputy Nastan[s]ky had reasonable suspicion to stop the defendant for violating RCW 46.61.305." CP at 45. RCW 46.61.305(2) provides:

A signal of intention to turn or move right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning.

Finding of fact 1.4—that Nastansky observed Flynn failed to signal at least 100 feet before the turn—supports this conclusion of law.

18

Second, Flynn challenges conclusion of law 2.3: "The defendant was required to stop, to identify himself and give his current address, pursuant to RCW 46.61.021." CP at 45. RCW 46.61.021(1) provides, "Any person requested or signaled to stop by a law enforcement officer for a traffic infraction has a duty to stop"; and RCW 46.61.021(3) provides that anyone an officer stops to investigate for a traffic infraction "has a duty to identify himself or herself and give his or her current address" if the officer requests such information. The findings of fact, especially finding of fact 1.14, establish that the deputies stopped Flynn for a traffic infraction; thus, the law required Flynn to stop and to provide his address and identification.

Third and fourth, Flynn challenges conclusion of law 2.6, "The deputies' search of the defendant's person was a valid search incident to arrest"; and conclusion of law 2.8, "Deputy Nastansky's traffic stop of the defendant was not a pretext stop." CP at 45. Flynn contends that because the officers admitted that they were looking for reasons to pull over vehicles, their stopping his vehicle was pretextual and the resulting search incident to arrest was therefore not valid. Neither the law nor the facts support this contention. An illegal pretextual stop is one made to "accomplish an impermissible ulterior motive." *State v. Ladson*, 138 Wn.2d 343, 354, 355-56, 979 P.2d 833 (1999). An officer can, however, conduct an investigative stop "if the arresting officer can attest to specific and objective facts that provide a reasonable suspicion that the person stopped has committed or is about to commit a crime,"[15] based on what the officer knew at the start of the stop. *State v. Lee*, 147 Wn. App. 912, 917, 199 P.3d 445 (2008), *review denied*, 166 Wn.2d 1016 (2009). Here, the findings support the trial court's conclusions that the

---

[15] *State v. Hopkins*, 128 Wn. App. 855, 862, 117 P.3d 377 (2005).

deputies lawfully stopped Flynn for a traffic infraction[16] and then lawfully arrested him for driving without a valid driver's license.

We reverse the unlawful possession of a controlled substance with intent to deliver conviction and remand for retrial.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Hunt, J.

We concur:

Worswick, C.J.

Johanson, J.

---

[16] That the deputies were on routine patrol, running vehicle plates, and "looking for any reason to pull a vehicle over," did not make this stop unlawful under the circumstances here. SAG at 6.